Daniel C. Fleming (Bar No. 18631986)
WONG FLEMING P.C.
821 Alexander Road, Suite 200
Princeton, New Jersey 08540
Phone: (609) 951-9520
Fax: (609) 951-0270
dfleming@wongfleming.com
*Attorneys for Plaintiff Toyota Motor Credit Corporation.*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(Newark Vicinage)**

| | |
|---|---|
| TOYOTA MOTOR CREDIT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CTE 1 LLC; LEONARD AUTOMOTIVE ENTERPRISES, INC.; CARMINE A. DEMAIO III; FRANK C. HOLTHAM JR.; AND CARMINE ZECCARDI JR.,<br><br>Defendants. | Civil Action No.<br><br>**VERIFIED COMPLAINT** |

Plaintiff Toyota Motor Credit Corporation ("TMCC"), by and through its undersigned counsel, hereby submits this Complaint against Defendants CTE 1 LLC ("CTE"), Leonard Automotive Enterprises, Inc. ("Leonard Auto"), Carmine A. DeMaio III ("Mr. DeMaio), Frank C. Holtham Jr. ("Mr. Holtham") and Carmine Zeccardi Jr. ("Mr. Zeccardi") (collectively, "Defendants"), and alleges as follows:

**PRELIMINARY STATEMENT**

1.  TMCC engages in the business of inventory financing as a lender to Lexus and Toyota dealers across the country, including to CTE. The Inventory Loan and Security

Agreement ("CTE Inventory Agreement") is the means by which TMCC provided inventory financing to CTE so that CTE (also called "floorplan") could purchase new motor vehicles, among other things, from the manufacturer, Toyota Motor Corporation.

2. The most significant risk in inventory financing is that the dealer borrower will sell the collateral at retail and then wrongfully retain the proceeds that should have been remitted to the inventory floorplan lender without informing the lender of the sale. A consumer purchaser of inventory in the ordinary course of business customarily takes free of the inventory floorplan lender's lien. Because inventory is intended to be sold, the transaction to the consumer has no indicia of impropriety. The inventory floorplan lender's main protection is therefore the trust and integrity of the dealer borrower. To the extent that the dealer borrower sells a vehicle in its inventory without paying the principal owed to the inventory floorplan lender, such an occurrence is known as a "Sale Out of Trust" or "SOT."

3. In addition to the fact that a SOT requires that the dealer borrower misrepresent to the inventory floorplan lender the items it has sold, it also constitutes an event of default under the CTE Inventory Agreement.

4. This lawsuit is brought by reason of Defendant CTE's sudden and unexpected creation of a SOT of $8,895,219.43.

**PARTIES**

5. Plaintiff Toyota Motor Credit Corporation is a company organized and existing pursuant to the laws of the State of California, having its principal place of business at 6565 Headquarters Drive W2-5A, Plano, Texas 75024-5965.

6. Upon information and belief, Defendant CTE 1 LLC is a limited liability company organized and existing pursuant to the rules and laws of the State of New Jersey, with

its principal place of business at 53-59 Engle St., Englewood, NJ 07631.  The members of CTE 1 LLC are Defendants Carmine A. DeMaio III, Frank C. Holtham Jr. and Carmine Zeccardi, Jr.

7. Upon information and belief, CTE also operates satellite locations, which are located at the following addresses:

   a. 75 Columbus Ave., Englewood, New Jersey 07631,

   b. 335 Grand Ave., Leonia, NJ 07605,

   c. 40 Rockwood Place, Englewood, New Jersey 07631 and

   d. 136 Engle St., Englewood, New Jersey 07631

8. Upon information and belief, Defendant Leonard Automotive Enterprises Inc. is a corporation organized and existing pursuant to the rules and laws of the State of New Jersey, with its principal place of business at 278 River Street, Hackensack, NJ 07601 and a guarantor of CTE.

9. Upon information and belief, Defendant Carmine A. DeMaio III is an individual residing at 5 Cold Hill Road, Morris Plains, New Jersey 07950, who is a principal, the operating manager, and guarantor of CTE.

10. Upon information and belief, Defendant Frank C. Holtham Jr. is an individual residing at 29 West Church Road, Saddle River, New Jersey 07458, who is a guarantor of CTE and who is a principal, the president, and guarantor of Leonard Auto.

11. Upon information and belief, Defendant Carmine Zeccardi, Jr. is an individual residing at 215 Buckingham Road, Tenafly, 07570 New Jersey, who is a guarantor of CTE.

## VENUE AND JURISDICTION

12. The United States District Court for the District of New Jersey, Newark Vicinage, is the proper venue for this action because this is the judicial district where the collateral for the debt is located and where Defendants conducted business at the commencement of this action.

13. The United States District Court for the District of New Jersey, Newark Vicinage, possesses diversity jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332(a) because Plaintiff TMCC is a citizen of California, whereas Defendants are citizens of the states of New Jersey, and the amount of Plaintiff TMCC's claims against Defendants exceeds $75,000.

14. As of October 16, 2019, the total principal amount of the debt due and owing that is the subject of this action is as follows: loans made pursuant to the Capital Loan and Security Agreement ("CTE Capital Agreement") and the CTE Inventory Agreement entered into by Defendant CTE in the amount of $49,848,960.86, and secured by certain collateral described therein, as well as by the unlimited guaranties of the Defendants Leonard Auto, Mr. DeMaio, Mr. Holtham and Mr. Zeccardi (collectively, "Guarantors").

## STATEMENT OF FACTS

15. On or about August 17, 2017, TMCC and CTE entered into the CTE Inventory Agreement, through which TMCC extended credit to CTE for the purchase of new and used motor vehicles. A true and accurate copy of the CTE Inventory Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

16. On or about August 17, 2017, CTE and TMCC entered into the CTE Capital Agreement in which TMCC agreed to establish capital loans to CTE, including a revolving capital loan to CTE and provide term working capital to CTE. A true and correct copy of the CTE Capital Agreement is attached hereto as **Exhibit B** and incorporated herein by reference.

17. The CTE Inventory Agreement and the CTE Capital Agreement together are the "CTE Financing Agreements."

18. The collateral securing the repayment of all credit extended under the CTE Financing Agreements includes:

> all of the following property of Borrower, whether now owned, on order, in transit, or hereafter acquired or created (i) inventory, including new and used Motor Vehicles, including all parts, accessories, furnishings and supplies, and inventory property of like kind or type including replacements, substitutions, additions and returns, and further including all consigned goods; (ii) equipment, including all new and used furniture, equipment, appliances, fixtures, machinery, tools and supplies and good of like kind or type, including all additions, substitutions, replacements, attachments and accessories; (iii) investment properties; (iv) accounts; (v) deposit accounts, including the Operating Account (as defined in this Agreement), and all monies on deposit therein; (vi) cash money or other personal property assets that now or hereafter come into the possession, custody, or control of TMCC, including payments and credits that TMMC may owe to such Borrower that TMCC may have or retain in its possession, whether in the form of cash collateral, reserve contingency or escrow accounts or otherwise; (vii) chattel paper (including electronic chattel paper), instruments, documents, security agreements, contract rights, policies, certificates of insurance, advance warranty payments, including any guaranties thereof and choses or things in action; (viii) such Borrower's general intangibles (including tax refunds, license rights, franchise rights, copyrights, patent rights, trademarks, service marks, trade names and goodwill, files, computer disks and tapes, computer programs and software, catalogs, purchase orders and customer lists, all rights to receive payment, credits and other compensation including all holdbacks, incentive payments, rebates, stock rebates, refunds, allowances, and additional 'factory credits' from any manufacturer, distributor of supplier of inventory or equipment, or from any of their subsidiaries or affiliates), supporting obligations, URLs and domain names; (ix) Negotiable Collateral; (x) all proceeds of the foregoing or any portion thereof, including proceeds of proceeds, goods received in trade, claims and cost recoveries, insurance proceeds, refunds of insurance premiums, proceeds derived from such Borrower's sale or assignment of chattel paper and all cash and other funds held in all deposit account in which proceeds may be deposited; and (xi) Borrowers' Books. The types of Collaterals described above are intend to change, expand and contract as the definitions and descriptions of such types

of Collateral that are set forth in the Uniform Commercial Code change, expand and contract.
(the "Collateral") See **Exhibits A, B**.

19. On July 18, 2017, TMCC perfected its security interest in the Collateral by filing a UCC Financing Statement with the New Jersey Department of Treasury. A true and correct copy of the UCC Financing Statement is attached hereto as **Exhibit C** and incorporated herein by reference

20. In connection with the CTE Financing Agreements, on August 17, 2017, Mr. DeMaio, Mr. Holtham and Leonard Auto executed a Continuing Guaranty ("First Guaranty") through which "in order to induce TMCC to enter into or continue its financing relationships with [CTE]" each of the Guarantors, jointly and severally "**IRREVOCABLY AND UNCONDITIONALLY GUARANTEE[ ]** to TMCC,… the payment when due of all Indebtedness [owed by CTE], in each case when and as the same shall become due and payable…" A true and correct copy of the First Guaranty is attached hereto as **Exhibit D** and incorporated herein by reference.

21. On or about November 21, 2017, a Second Amendment to the CTE Financing Agreement ("Second Amendment") was entered into between CTE, Leonard Auto and TMCC in which an additional $500,000.00 was advanced on a revolving credit loan. A true and correct copy of the Second Amendment is attached hereto as **Exhibit E** and incorporated herein by reference..

22. In connection with the Second Amendment, Leonard Auto, Mr. DeMaio, Mr. Holtham, and Mr. Zeccardi executed a Continuing Guaranty ("Second Guaranty") in which "in order to induce TMCC to enter into or continue its financing relationships with [CTE]" each of the Guarantors, jointly and severally "**IRREVOCABLY AND UNCONDITIONALLY**

**GUARANTEE[ ]** to TMCC,… the payment when due of all Indebtedness [owed by CTE], in each case when and as the same shall become due and payable…" A true and correct copy of the Second Guaranty is attached hereto as **Exhibit F** and incorporated herein by reference. .

23. On November 21, 2017, the Second Guaranty was amended ("Addendum to Guaranty", and together with the First Guaranty and Second Guaranty, the "Guaranty Agreements") limiting Mr. Zeccardi's liability to "18.75% of the Guaranteed Obligations." A true and correct copy of the Addendum to Guaranty is attached hereto as **Exhibit G** and incorporated herein by reference.

24. DataScan is a third-party vendor that TMCC utilizes to conduct floorplan audits of CTE to ensure CTE's compliance with the CTE Financing Agreements. When conducting an audit, DataScan inspects the inventory and compares it to a list provided by TMCC of the unsold vehicles that TMCC financed under the CTE Financing Agreements. If a vehicle on DataScan's list is missing at the dealership, it is marked as Sold Out of Trust.

25. On October 11, 2019, DataScan attempted to conduct a floorplan audit on behalf of TMCC, at CTE's dealership located at 53-59 Engle St., Englewood, NJ 07631.

26. During the attempted audit, DataScan could not find approximately 200 motor vehicles that were on TMCC's floorplan. The value of these missing vehicles is in the millions of dollars.

27. Due to the excessively large number of missing vehicles and the inability to locate records for those vehicles, DataScan could not complete its audit and informed TMCC as such.

28. Immediately thereafter, on October 12, 2019, representatives of TMCC promptly conducted their own floorplan audit and confirmed the worst—that approximately 200 motor vehicles, as well as certificates of title and other evidence of ownership, were missing since the

166662.1

prior audit was completed on September 12, 2019 (at the time, TMCC had been auditing CTE monthly), and CTE had created SOTs in excess of $5,500,000.

29. On October 14, 2019, TMCC conducted another audit which showed that even more motor vehicles were missing from the floorplan, adding approximately $600,000 to the SOT amount.

30. After the audit conducted on October 14, 2019, TMCC concluded that in a matter of days over the holiday weekend, CTE had created SOTs in excess of $6,200,000.

31. On October 15, 2019, TMCC hand-delivered and sent the Defendants a Notice of Default and Suspension of Credit Lines Letter ("Notice Letter") informing Defendants that CTE had defaulted under the terms of the Loan Documents. A true and correct copy of the Notice letter is attached hereto as **Exhibit H** and incorporated herein by reference.

32. During the day on October 15, 2019, TMCC conducted another audit which showed numerous more motor vehicles were missing, again adding approximately $600,000 in SOTs since Monday.

33. On October 11, 2019 and October 14, 2019, TMCC verbally demanded to Mr. DeMaio that CTE make immediate payment of the SOT amounts; however, because of the bank holiday, CTE was unable to access funds to pay TMCC immediately.

34. On the morning of October 16, 2019, TMCC verbally demanded to Mr. DeMaio that CTE make immediate payment of the SOT amounts and CTE immediately surrender all motor vehicles financed under the CTE Inventory Agreement.

35. On the afternoon of October 16, 2019, TMCC verbally demanded to Mr. DeMaio that CTE make immediate payment of all amounts due and owing in connection with CTE

Inventory Agreement and that CTE immediately surrender all motor vehicles financed under the CTE Inventory Agreement.

36. On October 17, 2019, TMCC sent Defendants a Notice of Default and Demand For Payment ("Demand Letter") demanding payment of all obligations under the CTE Financing Agreements and further demanding the immediate possession of the Collateral, as defined in the CTE Financing Agreements, in Defendants possession. Later that same day, TMCC sent Defendants a Notice of Default and Updated Demand For Payment ("Updated Demand Letter"), which reflected the updated SOT amount. True and correct copies of the Demand Letter and Updated Demand Letter are attached hereto as **Exhibit I** and incorporated herein by reference.

37. Pursuant to the terms of the CTE Financing Agreements, upon an event of default any and all obligations become immediately due and payable without notice of demand, which is expressly waived by CTE in the CTE Financing Agreements and the Guarantors in the Guaranty Agreements.

38. CTE owes TMCC the following amount as of October 16, 2019:

| | |
|---|---|
| (a) Sold Out of Trust Vehicles: | $8,895,219.43 |
| (b) Wholesale Loan | $20,865,236.28 |
| (c) WorkingCapital Loan | $20,088,505.15 |
| **Total:** | **$49,848,960.86** |

39. Moreover, pursuant to the Second Guaranty and the Amended Guaranty entered into by Defendants Leonard Auto, Mr. DeMaio, Mr. Holtham, and Mr. Zeccardi, each of the Guarantors are responsible for the outstanding indebtedness of CTE upon an event of default on any debt or obligation due and owing to TMCC.

40. Due to the occurrence of an event of default under the CTE Financing Agreement, Guarantors, pursuant to the Guaranty Agreements, became immediately responsible for the

166662.1

outstanding principal balance, plus accrued interest, attorneys' fees and costs due and owing from CTE to TMCC.

41. Additionally, CTE has failed to deliver to TMCC the Collateral securing the amounts due and owing.

## FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT AS AGAINST DEFENDANT CTE)

42. TMCC hereby incorporates each and every allegation contained in the previous Paragraphs as if each was fully set forth at length herein.

43. CTE has breached the terms of the CTE Inventory Agreement by failing to make payments when due thereunder, by engaging in sales out of trust and by failing to voluntarily surrender the Collateral to TMCC.

44. CTE has breached the terms of the CTE Inventory Agreement by failing to hold in trust and remit proceeds on the sale of each new and used car to TMCC.

45. TMCC has performed all obligations owed to CTE, except those obligations TMCC was prevented or excused from performing as a result of CTE's defaults and breaches.

46. As a direct result of CTE's defaults and breaches, TMCC has been made to suffer pecuniary damages. TMCC has suffered damages in the amount of $49,848,960.86, plus accruing interest, attorneys' costs and fees.

## SECOND CAUSE OF ACTION
### (BREACH OF CONTRACT AS AGAINST DEFENDANT CTE)

47. TMCC hereby incorporates each and every allegation contained in the previous Paragraphs as if each was fully set forth at length herein.

166662.1

48. CTE has breached the terms of the CTE Capital Agreement by "failing to perform or default in the performance of any term, covenant or condition contained or referred to in this Agreement or in [the CTE Inventory Agreement]."

49. TMCC has performed all obligations owed to CTE, except those obligations TMCC was prevented or excused from performing as a result of CTE's defaults and breaches.

50. As a direct result of CTE's defaults and breaches, TMCC has been made to suffer pecuniary damages. TMCC has suffered damages in the amount of $49,848,960.86, plus accruing interest, attorneys' costs and fees.

### THIRD CAUSE OF ACTION
### (BREACH OF GUARANTY AS AGAINST DEFENDANTS LEONARD AUTO, MR. DEMAIO, MR. HOLTHAM, AND MR. ZECCARDI)

51. TMCC hereby incorporates each and every allegation contained in the previous Paragraphs as if each was fully set forth at length herein.

52. As a result of CTE's breach of its obligations pursuant to the CTE Capital Agreement and CTE Inventory Agreement, the Guarantors became immediately responsible for the outstanding principal balance, plus accrued interest, attorneys' fees and costs due.

53. Guarantors have breached their obligations under the Guaranty Agreements, and in so doing has caused TMCC to suffer pecuniary damages.

54. By executing the Guaranty Agreements, each Guarantor expressly agreed to, and is so obligated, to pay TMCC reasonable attorneys' fees and the costs of any action instituted to collect upon the default of CTE.

55. As a direct result of the Guarantors' default on the Guaranty Agreements, there is due and owing from Leonard Auto, Mr. DeMaio and Mr. Holtham, the amount of

11

166662.1

$49,848,960.86, and due and owing from Mr. Zeccardi an amount of $9,346,680.17, plus accruing interest and attorneys' fees and costs, pursuant to the terms of the Guaranty Agreements.

## FOURTH CAUSE OF ACTION
### (REPLEVIN)

56. TMCC hereby incorporates each and every allegation contained in the previous Paragraphs as if each was fully set forth at length herein.

57. TMCC, in compliance with the requirements of CTE Financing Agreements, demanded the immediate possession of the Collateral.

58. In response CTE has refused, and continues to refuse to turn over the Collateral to TMCC.

59. Plaintiff's interest therein will be adversely affected by the continued possession of the Collateral by CTE.

## FIFTH CAUSE OF ACTION
### (RECOVERY OF SECURITY AND INJUNCTIVE RELIEF IN THE FORM OF A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION AS AGAINST ALL DEFENDANTS)

60. TMCC hereby incorporates each and every allegation contained in the previous Paragraphs as if each was fully set forth at length herein.

61. Security for all amounts due and owing to TMCC, as memorialized in the terms of the CTE Financing Agreements, pledged certain of the goods, parts and materials of CTE, specifically, and without limitation, the Collateral.

62. On information and belief, the Collateral is located at, and situated within or on, that parcel of land commonly identified as 53-59 Engle St., Englewood, NJ 07631, 75 Columbus

Ave., Englewood, New Jersey 07631, 335 Grand Ave., Leonia, NJ 07605, 40 Rockwood Place, Englewood, New Jersey 07631 and 136 Engle St., Englewood, New Jersey 07631.

63. TMCC has declared Defendants in default pursuant to the terms of the CTE Capital Agreement and CTE Inventory Agreement.

64. On information and belief, the Collateral has not been taken for a tax, assessment, or fine pursuant to law, or under an execution or attachment against property of TMCC.

65. The Collateral came into possession of Defendants through purchase transactions financed by TMCC.

66. On information and belief, Defendants' have wrongfully leased, sold, transferred, consigned, auctioned, dissipated, concealed, pledged, or otherwise disposed of the Collateral.

67. As a direct result of Defendants' wrongful disposal of the Collateral, and continued refusal to remit the proceeds therefrom to TMCC, TMCC has been made to suffer pecuniary damages in the amounts set forth herein, and in a specific amount according to proofs. TMCC deems itself inadequately protected.

68. Each of the CTE Capital Agreement and CTE Inventory Agreement provides for the recovery of attorneys' fees and costs in the event of default.  TMCC has incurred attorneys' fees and costs as a result of the defaults of CTE and the Guarantors, and as a result of Defendants' continued disposal of Collateral and refusal to remit the proceeds from the sale of any Collateral to TMCC.

69. The refusal of Defendants to remit the proceeds from the sale of any Collateral is wrongful and a violation of TMCC rights under the CTE Financing Agreement.

70. Accordingly, TMCC is entitled to a temporary restraining order, preliminary injunction, and permanent injunction to restrain Defendants from leasing, selling, transferring,

consigning, auctioning, dissipating, concealing, pledging, granting a security interest in, or otherwise disposing of, any of the Collateral on which TMCC holds a security interest in pursuant to the CTE Financing Agreements entered between the parties unless 1) Defendants immediately and before conclusion of any transaction report all sales or leases of Collateral to Plaintiff; 2) Defendants immediately (a) remit to Plaintiff in the form of certified or other immediate funds the invoice proceeds from sales of vehicle Collateral in amounts no less than the floorplan balance or (b) provide evidence of a valid retail contract through Plaintiff for the sale or lease of vehicle Collateral; 3) Defendants turn over all manufacturer's statement of origin ("MSO"), certificates of title ("COT") and keys relating to TMCC's Collateral; 4) Defendants release and surrender to an officer or representative of this Court all monies and amounts currently held by Defendants, or to which the Defendants jointly and/or individually have access or rights, which monies were obtained through the auction, lease, sale, transfer, or other disposition, in or out of trust, of any Collateral disposed of by CTE; 5) Defendants make the immediate assignment of CTE open accounts and reserves with its new vehicle manufacturer Toyota Motors North America that would cause the immediately direction of all rebates, holdback, warranty monies, etc. owed to CTE directly over to Plaintiffs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for a judgment as against Defendants, and each of them as follows:

1. For damages in the minimum amount of $49,848,960.86 as of October 16, 2019 plus accruing interest;

2. For a temporary restraining order, preliminary injunction, and permanent injunction, enjoining Defendants and Defendants' respective agents, servants, employees,

representatives, and all other persons acting under the aegis of, in concert with, or for Defendants, from leasing, selling, transferring, consigning, auctioning, dissipating, concealing, pledging, granting a security interest in, or otherwise disposing of, any of the Collateral on which TMCC holds a security interest in pursuant to the CTE Financing Agreements entered between the parties unless 1) Defendants immediately and before conclusion of any transaction report all sales or leases of Collateral to Plaintiff; 2)  Defendants immediately (a) remit to Plaintiff in the form of certified or other immediate funds the invoice proceeds from sales of vehicle Collateral in amounts no less than the floorplan balance or (b) provide evidence of a valid retail contract through Plaintiff for the sale or lease of vehicle Collateral; 3) Defendants turn over all MSO, COT and keys relating to TMCC's Collateral; 4) Defendants release and surrender to an officer or representative of this Court all monies and amounts currently held by Defendants, or to which the Defendants jointly and/or individually have access or rights, which monies were obtained through the auction, lease, sale, transfer, or other disposition, in or out of trust, of any Collateral disposed of by CTE; 5) Defendants make the immediate assignment of CTE open accounts and reserves with its new vehicle manufacturer Toyota Motors North America that would cause the immediately direction of all rebates, holdback, warranty monies, etc. owed to CTE directly over to Plaintiffs.

    3.      For attorneys' fees and costs of suit according to proof; and

    4.      For all such other relief as the Court may deem just and proper.

DATED: October 17, 2019        WONG FLEMING, PC
*/s/ Daniel C. Fleming*
Daniel C. Fleming
821 Alexander Road, Suite 200
Princeton, New Jersey  08543
Phone:  609-951-9520
Fax:     609-951-0270

Email:  dfleming@wongfleming.com
*Attorneys for Plaintiff Toyota Motor Credit Corporation*

## **VERIFICATION**

I, Karen Long, declare as follows:

1. I am Eastern Region National Dealer Lending Manager for Toyota Motor Credit Corp.

2. I have personal knowledge of the business of Toyota Motor Credit Corp. as it relates to Defendants, including those set out in the foregoing Verified Complaint for Money Damages and Injunctive Relief; and if called on to testify I would competently testify as to the matters stated herein.

3. I verify pursuant to 28 U.S.C. § 1746, under penalty of perjury and under the laws of the United States of America that the factual statements in this Complaint concerning Toyota Motor Credit Corp., its activities, and its intentions are true and correct, as are the factual statements concerning Defendants, their activities, and their intentions.

Dated:  October 17 2019

_____

Karen Long